UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE APPLICATION OF §
VENEQUIP, S.A., §
§
*Applicant*, §
§ Case No. 3:21 mc 52 - BJD-PDB
§
RING POWER CORPORATION, §
*Respondent*. §
§
§
§

**APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782(a) PERMITTING VENEQUIP, S.A. TO ISSUE SUBPOENAS FOR THE TAKING OF DEPOSITIONS AND THE PRODUCTION OF DOCUMENTS FROM RING POWER CORPORATION FOR USE IN SWISS PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW[1]**

Venequip, S.A. ("Venequip") applies to this Court for an Order allowing it to issue subpoenas pursuant to 28 U.S.C. § 1782 directing Ring Power Corporation ("Ring"), a resident of this District, to produce documents and provide deposition testimony for use in litigation recently filed by Venequip in Switzerland (the "Swiss Proceeding"). Venequip seeks to issue subpoenas for documents and testimony substantially in the form set forth in **Exhibits A** and **B** based on the requested information's relevance to the Swiss Proceeding. **Exhibit C** contains a supporting factual declaration by Mickael Besse, Finance Director of the Venequip Group.[2]

---

[1] Although courts routinely grant section 1782 applications *ex parte*, *see In re Clerici*, 481 F.3d 1324, 1337 (11th Cir. 2007) (affirming district court's denial of motion to vacate order granting *ex parte* application), Venequip is filing this application with notice. It will file certificates of service with the Court upon delivering copies of this application to the discovery targets.
[2] A proposed Order is attached as **Exhibit E**.

This matter relates to the demise of the decades-long business relationship between Venequip and Caterpillar S.A.R.L. ("CAT"), a Swiss entity and the other party to the Swiss Proceeding, and Venequip's recent discovery that CAT has for many years been acting in bad faith towards Venequip. For example, Venequip recently discovered that CAT had been in breach of its contractual obligations for many years by, among other things, selling its products to other dealers at prices significantly lower than those charged to Venequip. This, in turn, allowed other dealers to offer significantly more competitive prices to customers in Venezuela to whom Venequip could not offer competitive prices because other dealers' prices were often lower than the selling (distributor) prices at which Venequip purchased the subject products from Caterpillar. Here, Venequip seeks to obtain documents and testimony from Ring, a non-party to the Swiss Proceeding.

As further discussed below, Venequip satisfies all four statutory requirements under § 1782, because (i) Venequip is an "interested person," as it is the plaintiff in the Swiss Proceeding; (ii) Venequip's request seeks evidence, including testimony and documents, from Ring; (iii) the requested discovery is for use in a "foreign proceeding," i.e., the Swiss Proceeding; and (iv) Ring resides or is "found" in the Middle District of Florida, with its corporate headquarters in St. Augustine.

Venequip also satisfies all four discretionary factors under *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247, 124 S. Ct. 2466, 2473 (2004), as (i) Ring is not a participant in the Swiss Proceeding and the information sought is inaccessible absent § 1782 assistance; (ii) the Swiss tribunal would likely accept the requested discovery

and there is no authoritative proof the Swiss tribunal would reject it; (iii) Venequip is not attempting to circumvent foreign policies; and (iv) the discovery sought is not intrusive or burdensome, as it is narrowly tailored to specific categories of information relevant and material to the Swiss Proceeding, and is otherwise readily obtainable.

## I.  FACTUAL BACKGROUND

Venequip, a Venezuelan entity, seeks information from Ring, found in this District, for use in the Swiss Proceeding in which and Ring is not a party.

### A.  The Contractual Relationship Between Venequip and Caterpillar S.A.R.L.

Venequip is a Venezuelan industrial construction supplier and servicer founded in 1927. **Exhibit C**, Besse Decl. at ¶ 2. Beginning in or around 2005, Venequip operated as the only authorized Dealer Representative and Distributor for CAT. *Id.*, at ¶ 3. CAT is owned and controlled by Caterpillar Inc. ("CAT Parent"), an Illinois-based publicly traded company. CAT Parent is the largest manufacturer of heavy equipment and machinery in the world. *Id.*, at ¶ 3.[3]

Under two written agreements between Venequip and CAT—the Distribution Agreement For Engines, Parts and Service and the Sales and Service Agreement—Venequip distributed, sold, and serviced CAT equipment in Venezuela (collectively, both Agreements, the "Distribution and Services Agreements").[4] In addition, at several points in time, CAT issued letters indicating that Venequip was the only

---

[3] *See also* https://www.caterpillar.com/en/company.html.
[4] The Distribution and Services Agreements are governed by Swiss law and subject to Swiss courts. *Id.*, at ¶ 9.

authorized dealer of CAT equipment in Venezuela. *Id.*, at ¶ 5. Further, in the parties' course of dealings and in practice, CAT always treated and held out Venequip as its exclusive distributor in Venezuela. *Id.*, at ¶ 6.

The Distribution and Services Agreements made clear that Venequip has been the Dealer Representative for Venezuela. *Id.*, at ¶ 7. Accordingly, these agreements provided that Venequip had to maintain places of business at various locations within Venezuela. *Id.*, at ¶ 7. Venequip was also required to maintain a certain inventory of stock parts and to provide warranty services to the users of CAT equipment within Venequip's territory. *Id.*, at ¶ 7. Additionally, the Distribution and Services Agreements required Venequip to make investments to perform product improvement programs, employee training programs, and other such services and/or investments to its facilities as requested by CAT. *Id.*, at ¶ 7. In other words, the Distribution and Services Agreements provided and required that Venequip make substantial investments within its prescribed territories in its role as Dealer Representative for CAT, which Venequip did (in excess of tens of millions of dollars). *Id.*, at ¶ 7.

Precisely because of Venequip's role as, in practice, the exclusive distributor of CAT equipment in Venezuela, the Distribution and Services Agreements provided that CAT would make payments to Venequip for invading sales of CAT equipment and parts in Venequip's territories by other CAT dealers ("Invasion Fees"). *Id.*, at ¶ 8. CAT made these payments either as a cash payment to Venequip or by giving Venequip credit that it could use towards future purchases of CAT equipment. *Id.*, at

¶ 8. The value of the compensation to which Venequip was entitled was a percentage of the CAT-suggested price for parts. *Id.*, at ¶ 8.

### B. Venequip and CAT Enjoyed a Mutually Beneficial Relationship for Many Years

By 2010, Venequip had annual revenues of approximately $500 million, as a result of selling and servicing CAT equipment in Venezuela, with over $350 million in assets built or acquired in Venezuela in furtherance of the Distribution and Services Agreements. *Id.*, at ¶ 10. Indeed, as a result of Venequip's efforts, CAT became the dominating brand for heavy equipment and machinery in Venezuela. *Id.*, at ¶ 11. For example, approximately 75% of all machinery and generators in the oil and gas industry in Venezuela were CAT equipment sold and serviced by Venequip. *Id.*, at ¶ 11. Venequip made substantial efforts and investments to make this happen. *Id.*, at ¶ 12. For example, by 2010, Venequip had spent hundreds of millions of dollars building specialized shops to repair and service CAT equipment. *Id.*, at ¶ 12. Venequip also employed hundreds of technicians certified by CAT, for whom Venequip paid the cost of training. *Id.*, at ¶ 12.

### C. CAT Parent Purports to Terminate the Relationship

Notwithstanding the foregoing, CAT Parent purported to terminate its relationship with Venequip by letter dated March 18, 2019, effective June 30, 2019. *Id.*, at ¶ 13. While no reason was given for the purported termination, it is plain that it was not because of Venequip's performance; indeed, Venequip's success as a CAT distributor is reflected in its robust sales. *Id.*, at ¶ 14. Moreover, to date, neither CAT

nor CAT Parent has ever alleged or stated in any communication or correspondence with Venequip that Venequip failed to perform or in any way breached the Distribution and Services Agreements. *Id.*, at ¶ 14.[5]

### D. Venequip Discovers CAT Has Been Acting in Bad Faith for Years

Venequip recently learned that for at least several years CAT has been acting in bad faith with respect to Venequip, and in violation of the Distribution and Services Agreements, causing Venequip significant financial damage. *Id.*, at ¶ 15. The evidence supports a finding that CAT circumvented Venequip's rights for years by: (i) discriminating against Venequip by charging Venequip substantially more for CAT equipment than it charged other similarly situated CAT dealers, including Ring, thus rendering Venequip increasingly noncompetitive as compared with out-of-country dealers who were incentivized to (and did) sell CAT equipment to destinations in Venequip's territories, thereby reducing Venequip's market share in Venezuela; and (ii) failing to pay Venequip the Invasion Fees, which, as described above, are the payments that Venequip is entitled to receive from CAT for out-of-country dealers, including Ring, invading Venequip's territory and selling CAT equipment and parts in

---

[5] Starting in 2015, the U.S. government began issuing regulations restricting certain business activities in Venezuela or with the Venezuelan government. *See* OFAC Sanctions Website available at https://home.treasury.gov/policy-issues/financial-sanctions/sanctions-programs-and-country-information/venezuela-related-sanctions. In February 2019, the U.S. government indicted two members of Venequip Machinery Sales Corp., a U.S. entity associated with Venequip, for paying bribes, as part of a scheme to enrich themselves, to three officials of a Venezuelan government-owned entity from 2009 to 2013. Neither Venequip—the Venezuelan entity and Applicant here—nor any of its executives was charged. *See* DOJ Press Release available at https://www.justice.gov/opa/pr/two-businessmen-charged-foreign-bribery-connection-venezuela-bribery-scheme. CAT never raised any of these issues with Venequip as grounds for termination. Indeed, no reason for the purported termination was given at all. **Exhibit C**, Besse Decl. at ¶ 14.

Venezuela, thus wrongfully depriving Venequip of tens of millions of dollars and impeding Venequip's ability to sell or offload inventory to other dealers when overstocked. *Id.*, at ¶ 16.

Specifically, and for example, when Venequip was overstocked, it attempted to sell to other dealers its stock of CAT equipment. *Id.*, at ¶ 17. However, certain dealers responded by informing Venequip that they had previously purchased the same equipment from CAT at substantially lower prices, a fact that CAT later acknowledged (upon being called out for it) in one specific instance by offering to make up the difference to Venequip. *Id.*, at ¶ 17. In some instances, it appears that the price difference was as much as 50%.

Further, by pure coincidence, Venequip discovered that Ring was selling into its territory when Venequip began receiving numerous requests by users of CAT equipment in Venezuela to repair and service CAT equipment that Venequip had not sold. *Id.*, at ¶ 18. Some of the equipment and parts sold into Venezuela appear to have been sold by Ring. *Id.*, at ¶ 18. Given the volume of CAT equipment that Venequip has identified in Venezuela that was not sold by Venequip, CAT owes Venequip millions of dollars in Invasion Fees. *Id.*, at ¶ 18.

Further still, CAT is deliberately impeding Venequip's ability to do any business in Venezuela. *Id.*, at ¶ 19. For example, Venequip continues to repair legacy CAT equipment installed in Venezuela. As such, it needs to purchase spare parts from CAT dealers. However, dealers have represented to Venequip that they cannot sell any parts

to Venequip because CAT has prohibited them from doing so, another demonstration of CAT's bad faith. *Id.*, at ¶ 19.

### E. Venequip Commences the Swiss Proceeding and Seeks § 1782 Discovery

Venequip has now commenced litigation in Switzerland against CAT. *Id.*, at ¶ 20. As indicated above, the Distribution and Services Agreements are governed by Swiss law and subject to Swiss courts. *See supra*, at ¶ 6. Under Swiss law, the case is subject to mandatory conciliation proceedings prior to the start of court proceedings. *Id.*, at ¶ 21.

Swiss law requires the contracting parties to act in good faith and to act in furtherance of the purpose of the agreement of the counterparty's expectations, rather than acting to frustrate the agreement's purpose and injure the counterparty. *Id.*, at ¶ 22. Here, Venequip has sued CAT for breach of contract. *Id.*, at ¶ 23. Specifically, Venequip alleges that CAT acted in bad faith and frustrated the purpose of the Distribution and Services Agreements, as well as Venequip's rights and expectations by, *inter alia*: (i) overcharging Venequip for equipment that it was selling to other dealers, such as Ring, for substantially less; (ii) facilitating the sale of equipment and parts by other dealers, such as Ring, in Venezuela and restraining Venequip's ability to compete with them by overcharging Venequip; (iii) failing to pay all due Invasion Fees for sales of other dealers, such as Ring; and (iv) preventing Venequip from continuing to service legacy CAT equipment in Venezuela by blacklisting it and prohibiting dealers from selling parts to Venequip. *Id.*, at ¶ 23. Under governing Swiss

law, CAT cannot at once contractually commit to a distribution agreement with Venequip and simultaneously act to undermine the very purpose of that agreement. Venequip intends to demonstrate that CAT deliberately sought to make it impossible for Venequip to perform properly under the Distribution and Services Agreements, given that CAT controls the manufacturer discounts and can decide which dealer benefits from the discount, all the while knowing where each dealer sells the CAT products it receives. *Id.*, at ¶ 24. Venequip seeks its actual losses, lost profits, and other consequential damages. *Id.*, at ¶ 25. Under Swiss law, a plaintiff is entitled to any and all forms of compensation to make it whole and place it in the same situation as if the harmful conduct had never occurred. *Id.*, at ¶ 25.[6]

Ring is one of several dealers that sold CAT products in Venezuela. *Id.*, at ¶ 27. With this Application, Venequip seeks discovery from Ring pursuant to 28 U.S.C. § 1782 for use in the Swiss Proceeding.

## II.  MEMORANDUM OF LAW

### A.  Statutory Purpose

Section 1782 is the most recent version of statutes that for more than 150 years have "provide[d] federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247, 124 S. Ct. 2466, 2473 (2004). The purpose of 28 U.S.C. § 1782 is to allow participants in proceedings before foreign or international tribunals to obtain assistance from U.S. federal courts

---

[6] In addition, Venequip does not believe that the Distribution and Services Agreements were properly terminated and thus will also seek expected revenues from 2019 to this day.

in gathering evidence for use in those foreign or international proceedings. *See Intel*, 542 U.S. at 247; *see also In re Clerici*, 481 F.3d at 1332 (holding that requirements for proper request under § 1782 were met and explaining that "assistance in obtaining evidence" for foreign courts is "the primary purpose of § 1782"); *accord In re Bayer AG*, 146 F.3d 188, 191–92 (3d Cir. 1998) (the current version of § 1782 was amended "to facilitate the conduct of litigation in foreign tribunals, improve international cooperation in litigation, and put the United States into the leadership position among world nations in this respect."). Section 1782's "twin aims" are "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts." *Intel*, 542 U.S. at 252. As explained by the U.S. Supreme Court in its landmark § 1782 opinion, "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Id.* at 247. Granting Venequip's Application is in line with both the language and purpose of § 1782.

"Once discovery is authorized under § 1782, the federal rules, FED. R. CIV. P. 26–36, contain the relevant practices and procedures for the taking of testimony and the production of documents." *Weber v. Finker*, 554 F.3d 1379, 1384–85 (11th Cir. 2009) (quoting *In re Clerici*, 481 F.3d at 1336).

### B. Legal Standard

#### 1. *The Four Statutory Requirements*

On receiving a section 1782 application, the district court first decides whether the applicant meets "the statute's four prima facie requirements: (1) the request must be made 'by a foreign or international tribunal,' or by 'any interested person'; (2) the request must seek evidence, whether it be the 'testimony or statement' of a person or the production of 'a document or other thing'; (3) the evidence must be 'for use in a proceeding in a foreign or international tribunal'; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance." *Victoria, LLC v. Likhtenfeld*, 791 F. App'x 810, 816 (11th Cir. 2019) (citations omitted); *see also In re MTS Bank*, No. 17-21545-MC-WILLIAMS/Torres, 2018 WL 3145806, at *3 (S.D. Fla. June 27, 2018). As discussed below, all four statutory requirements are met here.

#### 2. *The Four Discretionary Factors*

Once the statutory requirements are met, a district court is free to grant discovery in its discretion. *Intel*, 542 U.S. at 264–65. In exercising that discretion, a district court should consider four discretionary factors: (i) whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid; (ii) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (iii) whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies

of a foreign country or the U.S.; and (iv) whether the subpoena contains unduly intrusive or burdensome requests. *See id.* at 264–65; *see also In re: Application of Bracha Found.*, 663 F. App'x 755, 757–58 (11th Cir. 2016); *In re Republic of Argentina*, No. 20-MC-20589-BLOOM, 2020 WL 3046029, at *1–*2 (S.D. Fla. Feb. 12, 2020). As discussed below, all four discretionary factors are met here.

### C. Venequip Satisfies All Four Statutory Requirements.

Venequip satisfies the minimal showing necessary to authorize § 1782 discovery because it qualifies as an interested person seeking evidence, including documents and testimony for use in a foreign proceeding in Switzerland from Ring, which resides or is found in the Middle District of Florida.

#### 1. *Venequip, the Applicant, is an "Interested Person"*

Venequip plainly constitutes an "interested person" as it is the plaintiff in the Swiss Proceeding. Indeed, the U.S. Supreme Court has confirmed that a litigant in a foreign proceeding "may be the most common example of the interested persons who may invoke § 1782." *Intel*, 542 U.S. at 256; *see also id.* at 257–58 ("a complainant possesses a reasonable interest in obtaining judicial assistance, and therefore qualifies as an 'interested person' within any fair construction of that term") (citation omitted); *see also In re Republic of Argentina*, 2020 WL 3046029, at *1 (holding that a party to foreign proceeding is "interested person" under the statute).

### 2. *Venequip's Requests seek Evidence, Including Testimony and Document Production*

Venequip's requests, attached as **Exhibits A** and **B**, respectively seek the production of documents from Ring and testimony from a corporate representative of Ring. *See In re Novoship (UK) Ltd.*, No. 20-60876-MC-ALTMAN, 2020 WL 3286308, at *3 (S.D. Fla. June 18, 2020) (finding that an application under § 1782 requesting both testimony and production of documents via a subpoena satisfied the "evidence" requirement).

### 3. *The Requested Discovery is for Use in a "Foreign Proceeding"*

The Swiss Proceeding plainly qualifies as a foreign or international proceeding within the meaning of § 1782. Venequip has filed a lawsuit in Switzerland asserting claims for breach of contract against CAT. The litigation will proceed and be adjudicated before a Swiss tribunal. *See, e.g., Weber*, 554 F.3d at 1382 (affirming district court's grant of judicial assistance under § 1782 related to actions pending in Switzerland and Cyprus); *see also In re Ex Parte Appl. of Jommi*, 2013 WL 6058201, at *3 (N.D. Cal. Nov. 15, 2013) (Swiss court proceeding qualified as "foreign proceeding" for grant of § 1782 application). "It is not necessary for the adjudicative proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding." *Intel*, 542 U.S. at 259 (internal quotation omitted). In other words, a proceeding "for which discovery is sought under § 1782(a) must be in reasonable contemplation, but need not be *pending* or *imminent*." *Id.* at 247 (emphasis in original). If granted, Venequip will use the requested discovery to

prosecute its lawsuit against CAT in the Swiss Proceeding. **Exhibit C**, Besse Decl. at ¶ 23–25.

### 4. *Ring Resides or is "Found" in the Middle District of Florida*

Publicly available information confirms that Ring "resides or is found" in this District. *See* **Exhibit D**, report from Florida Secretary of State, Division of Corporations, listing 500 World Commerce Pkwy, St. Augustine, Florida 32092, within the Middle District of Florida, as Ring's principal address, mailing address, and the location of its registered agent and officers.

### D. **Venequip Satisfies All Four Discretionary Factors and the Court Should Exercise its Discretion to Grant the Application**

Where, as here, the information sought is relevant, it is "presumptively discoverable" under § 1782. *In re Bayer AG*, 146 F.3d at 196 ("relevant evidence is presumptively discoverable under § 1782"); *see also In re MTS Bank*, 2018 WL 3145806, at *7 (recognizing "presumption that district courts allow for discovery to proceed under section 1782"). Beyond relevance, all four discretionary factors here weigh *in favor* of granting Venequip's Application.

### 1. *Ring is Not a Participant in the Swiss Proceeding and the Information Sought is Inaccessible Absent § 1782 Assistance*

Courts presumptively grant § 1782 applications where, as here, the target is not a participant in the foreign proceeding. *Intel*, 542 U.S. at 264. That is because, as the Supreme Court explained, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.* at 264. Accordingly,

courts find the first discretionary factor satisfied and have granted discovery where a discovery target was not, and was not expected to become, a "participant" of the relevant foreign proceedings. *See, e.g., In re Bracha*, 663 F. App'x at 764 (factor weighed in favor of granting § 1782 discovery where it was "undisputed that Regions bank [was] not a participant in the prospective foreign proceedings"); *In re MTS Bank*, 2018 WL 3145806, at *6 ("Because there is no dispute that Sky Ocean is a non-participant in the Russian bankruptcy proceedings, this factor weighs in favor of granting MTS's motion" under § 1782).

Here, Ring is not and will not become a party to the Swiss Proceedings. Swiss courts do not have jurisdiction over Ring and do not have authority to compel foreign third parties, such as Ring, to produce discovery. *See* **Exhibit C**, Besse Decl. at ¶¶ 20, 23–25. Accordingly, Venequip does not have any means within the Swiss Proceeding or outside this Application to obtain the discovery requested.

Thus, this factor weighs *in favor* of granting Venequip's Application.

### 2. *The Swiss Tribunal Would Likely Accept the Requested Discovery*

To determine whether a § 1782 application meets the second discretionary factor, courts "look for 'authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of § 1782." *In re MTS Bank*, 2018 WL 3145806, at *6 (citations omitted); *In re Application of N. Am. Potash, Inc.*, No. 12-20637-CV-WILLIAMS/Turnoff, 2012 WL 12877816, at *6 (S.D. Fla. Nov. 19, 2012), *report and recommendation adopted*, No. 12-20637, 2013 WL 12113190 (S.D. Fla. Mar. 13, 2013) ("What is clear . . . is the fact that courts must consider only 'authoritative proof' that

the foreign jurisdiction would reject the § 1782 request for assistance."); *see also Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377 (5th Cir. 2010) (§ 1782 application meets the second factor when "there has been no 'clear directive' from the [foreign court or tribunal] that it 'would reject evidence'" produced in the United States) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)).

"Absent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation and international aspects,'" weighing in favor of granting discovery. *In re MTS Bank*, 2018 WL 3145806, at *6 (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)). Even "a suspicion that the evidence gathered would ultimately be rejected is not enough to overcome the presumption that district courts allow for discovery to proceed under section 1782 to promote the statute's goals of efficiency and comity." *In re MTS Bank*, 2018 WL 3145806, at *7. Here, there is no evidence that Swiss courts would reject evidence obtained in the United States via § 1782. To the contrary, U.S. courts have found Swiss courts affirmatively receptive to 1782 discovery. *See, e.g., Jommi*, 2013 WL 6058201, at *4; *see also Weber*, 554 F.3d at 1384 (affirming § 1782 discovery order where petitioner sought judicial assistance in context of Swiss criminal proceeding). Accordingly, this factor weighs *in favor* of granting Venequip's Application.

### 3. *Venequip is Not Attempting to Circumvent Foreign Policies*

For purposes of § 1782, "district courts should consider neither discoverability or admissibility in the foreign proceeding," but instead, "should err on the side of ordering discovery, since foreign courts can easily disregard any material that they do not wish to consider." *In re Potash, Inc.*, 2012 WL 12877816, at *8 (citations omitted).

Consequently, this factor weighs against the applicant only if the § 1782 application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Victoria*, 791 F. App'x at 817 (internal quotations and citations omitted). Here, there is no evidence of any such attempt. *See Jommi*, 2013 WL 6058201, at *4 (no circumvention of Swiss law). On the contrary, Venequip's request for discovery from Ring is a good faith effort to obtain relevant, material information Venequip actually needs regarding a complex, cross-border commercial dispute.

This factor therefore also weighs *in favor* of granting Venequip's Application.

### 4. *The Discovery Sought is Not Intrusive or Burdensome*

The information sought in Venequip's discovery requests is not "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. In weighing this factor, courts apply substantially the same standard as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure. "The reference in § 1782 to the Federal Rules suggests that ... the standards for discovery under those rules should also apply when discovery is sought under the statute." *In re Bayer AG*, 146 F.3d at 195. Here, the requests are narrowly tailored to the specific categories of information described in

**Exhibits A** and **B**. The information sought is relevant and material to the Swiss Proceeding and is otherwise readily obtainable. *In re Novoship*, 2020 WL 3286308, at *3 (court reviewed discovery requests and found "that they are neither unduly intrusive nor overly burdensome").

Given that Venequip's discovery requests are similarly narrowly tailored, *see* **Exhibits A** and **B**, this final factor also weighs *in favor* of granting Venequip's Application.

### III.  CONCLUSION

For the foregoing reasons, Venequip respectfully requests that the Court enter an Order pursuant to 28 U.S.C. § 1782 granting Venequip leave to serve the subpoenas attached hereto as **Exhibits A** and **B** and conduct the requested discovery, and for such other and further relief which Venequip is justly entitled.

Dated: October 29, 2021            Respectfully submitted,

By: /s/ Francisco O. Sanchez
**Francisco O. Sanchez**
Florida Bar No. 598445
sanchezfo@gtlaw.com
**Vanessa Palacio**
Florida Bar No. 98054
palaciov@gtlaw.com
**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Tel: 305-579-0500
Fax: 305-579-0717

**Daniel Pulecio-Boek**
*Motion for Pro Hac Vice Forthcoming*
pulecioboekd@gtlaw.com
**Nicole Silver**

*Motion for Pro Hac Vice Forthcoming*
silvern@gtlaw.com
**GREENBERG TRAURIG, LLP**
2101 L Street NW, Suite 1000
Washington, D.C. 20037
Tel: 202-331-3100
Fax: 202-331-3101

***COUNSEL FOR APPLICANT VENEQUIP, S.A.***